AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>16465 SE 166th Terrace, Renton, Washington and<br>Green Lincoln MKZ bearing WA plate BBJ3987 | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.    MJ18-443 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by this reference

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by this reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 846 | Distribution of Controlled Substances; Possession with Intent to Distribute Controlled Substances; Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

See attached affidavit, incorporated by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Aaron McAuley, Task Force Officer, DEA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 09/24/2018 _____

_____
*Judge's signature*

City and state: Seattle, Washington

Chief U.S. Magistrate Judge Brian A. Tsuchida
_____
*Printed name and title*

**Attachment A**

Property to be Searched

**16465 SE 166th Terrace, Renton, Washington –** Referred to herein as the "**target residence**." The residence is a two story single family home. The entrance to the **target residence** is a white door with the numbering 16465 on the left hand side as you look at the door from the street.

**Green Lincoln MKZ bearing WA plate BBJ3987**-Referred to herein as the "**target vehicle**." A green Lincoln sedan bearing WA plate BBJ3987, with VIN # 3LN6L2LU4DR816142. Registered to RUSSELL, Tanfred A and ROSS, Daima K at 16921 31st PL S, SeaTac WA.

**Attachment B**

List of Items to be Searched for and Seized

This warrant authorizes the government to search for and seize the following items:

Evidence and/or fruits of the commission of the following crimes: Distribution of, and possession with intent to distribute, controlled substances, and conspiracy to commit these offenses, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1), and 846; Use of communication facilities to commit, facilitate, or further an act or acts which constitute a felony in violation of Title 21, United States Code, Section 843(b); Possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c); and, Felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g), as follows:

1.     **Controlled Substances**: Including but not limited to cocaine, cocaine base in the form of crack cocaine, and heroin.

2.     **Drug Paraphernalia**: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items.

3.     **Drug Transaction Records**: Documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances, including such records stored in electronic format.

4.     **Customer and Supplier Information**: Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items, including such records stored in electronic format.

5.     **Cash and Financial Records**: Currency and financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; other records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, cashier's checks, and similar items, including such records stored in electronic format; and money counters.

6.     **Photographs/Surveillance**: Photographs, video tapes, digital cameras, surveillance cameras, and associated hardware/storage devices, and similar items, depicting property occupants, friends and relatives of the property occupants, or

Attachment B
List of Items to be Seized
Page 1

**Attachment B**

List of Items to be Searched for and Seized

suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances, including such records stored in electronic format.

7. **Weapons**: Firearms, magazines, ammunition, and body armor, and other weapons-related items such as holsters and equipment to clean firearms.

8. **Codes**: Evidence of codes used in the distribution of controlled substances, including but not limited to passwords, code books, cypher or decryption keys, and similar information.

9. **Property Records**: Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the premises, and similar records of other property owned or rented.

10. **Indicia of occupancy**, residency, and/or ownership of assets including, but not limited to, utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, mortgage statements, and other documents.

11. **Evidence of Storage Unit Rental or Access**:  rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, passwords, or other documents relating to storage units.

12. **Evidence of Personal Property Ownership**: Registration information, ownership documents, or other evidence of ownership of personal property including, but not limited to, vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and other personal property; evidence of international or domestic travel, hotel/motel stays; and any other evidence of unexplained wealth.

13. **Individual and business financial books**, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:
  a. Employment records:  paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.
  b. Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.
  c. Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

**Attachment B**

List of Items to be Searched for and Seized

   d. Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

   e. Collection accounts:  statements and other records.

   f. Certificates of deposit:  applications, purchase documents, and statements of accounts.

   g. Credit card accounts:  credit cards, monthly statements, and receipts of use.

   h. Receipts and records related to gambling wins and losses, or any other contest winnings.

   i. Insurance:  policies, statements, bills, and claim-related documents.

   j. Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

   14. All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

   15. All Western Union and/or Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash. These documents are to include applications, payment records, money orders, frequent customer cards, etc.

   16. Negotiable instruments, jewelry, precious metals, financial instruments, and other negotiable instruments.

   17. Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

   18. Correspondence, papers, records, and any other items showing employment or lack of employment.

   19. Telephone books, and/or address books, facsimile machines to include the memory system, any papers reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists. Also, telephone answering devices that record telephone conversations and the tapes therein for

**Attachment B**

List of Items to be Searched for and Seized

messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

20.     Safes and locked storage containers, and the contents thereof that are otherwise described in this document.

21.     Tools:  Tools that may be used to open hidden compartments in vehicles, paint, bonding agents, magnets, or other items that may be used to open/close or conceal said compartments.

22.     Cell Phones: Cellular telephones and other communications devices including smartphones (i.e., iPhones, Android phones, Blackberries, and the like) may be seized, and searched for the following items:

        a.     Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

        b.     Stored list of recent received, sent, and missed calls;

        c.     Stored contact information;

        d.     Stored photographs of narcotics, currency, firearms, or other weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data associated with those photographs;

        e.     Stored photographs of real estate, or other records pertaining to the purchase, sale, lease, or renovation of real property including any embedded GPS data associated with those photographs;

        f.     Stored text messages, as well as any messages in any internet messaging apps, including but not limited to Facebook Messenger, iMessage, Wikr, Telegram, Signal, WhatsApp, and similar messaging applications.

**AFFIDAVIT OF AARON MCAULEY**

STATE OF WASHINGTON    )
                         )     ss
COUNTY OF KING         )

I, Aaron McAuley, a Task Force Officer assigned to the Drug Enforcement

Administration, Seattle, Washington, having been duly sworn, state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.     I am a commissioned law enforcement officer of the Seattle Police

Department. I am also assigned to the Drug Enforcement Administration (DEA), Seattle

Field Office, as a Task Force Officer (TFO) with the Valley Narcotics Enforcement Team

(DEA Group D-22). I have been employed by the Seattle Police Department as an Officer

for over 10 years and a narcotics Detective for the last 2 years. I have formal training in

controlled substances investigations to include marijuana, methamphetamine, heroin,

MDMA, oxycodone and cocaine. My duty assignment includes investigating violations

of federal and state controlled substance laws. My law enforcement experience includes

my participation in numerous investigations of organizations trafficking in controlled

substances and as a result, I have an understanding of the manner in which drugs are

distributed and the various roles played by individuals and groups in the distribution. I

have participated in the execution of over a 100 drug search warrants.

2.     Throughout the course of my training, and in my 10 years of law

enforcement, I have become familiar with the methods of drug trafficking, have

interviewed dozens of suspects and criminal informants, and others familiar with the drug

trade. I am familiar with the appearance, prices, and transport methods of illegal

controlled substances. I have testified in criminal proceedings in State courts relating to

drug possession and trafficking.

3.     I am engaged in the investigation of narcotics trafficking with the

assistance of federal and local law enforcement. These entities include the Bureau of

Alcohol, Tobacco and Firearms and Explosives (ATF), Homeland Security Investigations

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  (HSI), Kent Police Department, Auburn Police Department, Renton police Department<

2  Federal Way police Department and Washington State Patrol.

3  ## II.     PURPOSE OF AFFIDAVIT

4  4.     This application seeks permission to search the following location, which is

5  more particularly described in Attachment A, attached hereto and incorporated by this

6  reference as if set forth fully herein.  As summarized herein, the location is believed to be

7  utilized by one or more participants in the crimes described herein, and there is probable

8  cause to believe evidence of those crimes will be found at this location:

9  **16465 SE 166th Terrace, Renton, Washington:** Hereinafter referred to as the

10  "**target residence**."  The **target residence** is believed to be the residence of

11  Tanford RUSSELL.

12  **Green Lincoln MKZ bearing WA plate BBJ3987:** Hereinafter referred to as the

13  "target vehicle."  The **target vehicle** is believed to be the vehicle used by Tanford

14  RUSSELL.

15  5.     I believe the **Target Residence** is presently being used in the Western

16  District of Washington in furtherance of the following federal criminal offenses:

17  Distribution of Controlled Substances and/or Possession of Controlled Substances with

18  Intent to Distribute, in violation of 21 U.S.C. § 841(a) (1), and/or conspiracy to commit

19  those same offenses, in violation of 21 U.S.C. § 846.

20  6.     I respectfully ask permission to execute these warrants outside of normal

21  warrant execution hours (after 10 pm, before 6 am).  As set forth below, surveillance has

22  established that RUSSELL keeps very odd hours, sometimes spending much of the night

23  dealing drugs and/or spending time at a casino.  Russell also has a history of being armed.

24  An after-hours warrant is specifically authorized pursuant to 21 U.S.C. § 879 on these

25  facts.

26  7.     I have obtained the facts set forth in this affidavit through my personal

27  participation in the investigation described below; from oral and written reports of other

28  law enforcement officers; and from records, documents and other evidence obtained

AFFIDAVIT OF TFO AARON MCAULEY - 2

1   during this investigation.  I have obtained and read official reports prepared by law

2   enforcement officers participating in this investigation.  When I refer to registration

3   records for vehicles, I am relying on records obtained from the Washington State

4   Department of Licensing.  Insofar as I have included event times in this affidavit, those

5   event times are approximate.

6         8.      Since this affidavit is being submitted for the limited purpose of obtaining

7   authority to search the subject location, and the subject vehicle, I have not included every

8   fact known concerning this investigation.  I have set forth only the facts that I believe are

9   essential for a fair determination of probable cause that the target subjects are involved in

10  drug trafficking, and the subject location and subject vehicle, are being used to facilitate

11  that drug trafficking.

### III.    SUMMARY OF INVESTIGATION

13        9.      In early September, 2018, Seattle Police Detective (DET) Stephen Knapp

14  and I interviewed a subject in custody at the Seattle Police Department (SPD) for

15  possession of crack-cocaine.  The subject stated they wanted to cooperate with law

16  enforcement in exchange for consideration on their case.  Det. Knapp and I signed the

17  subject up as a SPD confidential source (herein after the CS) following SPD guidelines

18  and protocols.

19        10.     The CS is an admitted narcotics user for over seven years and is familiar

20  with the appearance, use and purchasing of various forms of narcotics including the

21  one(s) in this case.   The CS has misdemeanor convictions for various narcotics and

22  thefts.  The CS also has felony convictions for the use of another's credit card and

23  possession of another's identification.   The CS also currently has an outstanding warrant

24  for unauthorized use of an ID out of Orange County Sheriffs Officer, California.  This

25  warrant is non-extraditable from Washington State.  While working with the CS, the

26  information he/she has provided has been proved to be factual.

27        11.     The aforementioned CS utilized in this case stated that a dealer using the

28  name of Tanford A RUSSELL, born in 1972, AKA "Taffy," was a mid- to upper-level

AFFIDAVIT OF TFO AARON MCAULEY - 3

1  dealer of crack cocaine and heroin operating in the King County area of Washington

2  State.   The CS has purchased quantities of the above narcotics from RUSSELL in the

3  past, as recently as within the past two weeks.  Det Knapp showed the CS a picture of

4  RUSSELL from social media and the CS confirmed that he was the male the CS knows

5  as Tanford RUSSELL.  The CS provided a cell phone number provided to the CS by

6  RUSSELL.  This number was 206-369-4838.  Det Knapp ran a check with DOL (WA

7  Department of licensing,) and located a 2013 Lincoln MKZ bearing WA plate BBJ3987,

8  registered to Tanfred A RUSSELL and Daima K. Ross.  "Tanfred" is another alias that

9  RUSSELL uses.

10         12.     RUSSELL is well-known to federal law enforcement.  Russell has a 2009

11  federal conviction for conspiracy to distribute cocaine and crack cocaine and possession

12  of a firearm in furtherance of a drug trafficking crime in this District, under CR08-

13  0082RSL.  It is my understanding that RUSSELL also possessed a firearm in connection

14  with those offenses, and plead guilty to a violation of 18 U.S.C. § 924(c) as a result.

15  RUSSELL cooperated in the prosecution of others and was sentenced to a custodial term

16  of 78 months, to be followed by five years of supervised release.  However, his

17  supervision was terminated early by the court, and ended on or about May 18, 2015.

18  During that case, Daima Ross, who was (and may still be) RUSSELL's spouse, was also

19  prosecuted and convicted for controlled substance offenses.

**IV.    PROBABLE CAUSE FOR SEARCHING THE TARGET RESIDENCE**

**A.     CONTROLLED PURCHASE FROM RUSSELL.**

22         13.     During the first part of September, 2018, the CS, at the instruction of

23  investigators, initiated phone contact with a telephone number the CS had provided as

24  being utilized by "Taffy".[1]

25         14.     The CS was directed to meet RUSSELL at a location in the area of the

26  Southcenter Mall in Tukwila, WA to conduct a purchase of narcotics.  Investigators met

---

[1] The more precise details of this controlled purchase, in terms of the exact date, quantity, and price are known to me.  Those details are omitted herein to protect the CS's identity.

AFFIDAVIT OF TFO AARON MCAULEY - 4

1  with the CS prior to, and after, the meeting with RUSSELL and searched him/her.

2  He/she was found to be free of unauthorized items and contraband.  The CS was kept

3  under constant surveillance during his/her travel to the meet location.

4       15.    Surveillance Investigators observed RUSSELL arriving in the **target**

5  **vehicle**.  RUSSELL and the CS met each other and had contact for less than five minutes.

6       16.     Investigators followed RUSSELL after the narcotics transaction with the

7  CS.  RUSSELL was followed to the area of 2829 S Bayview St in Seattle, where he

8  parked the target vehicle at the curb. An unidentified African-American male approached

9  and entered the front passenger side of RUSSELL's vehicle. After a short time, this male

10 exited the vehicle and walked out of the view of investigators.  A short time later an

11 unidentified African-American female approached RUSSELL's car and spoke with

12 RUSSELL through the open front passenger window. After a short time, this black

13 female broke contact and traveled out of view of investigators.  Based on my training and

14 experience I believe RUSSELL engaged in additional drug transactions after dealing to

15 the CS.  These types of short interactions are a common tactic for narcotic traffickers to

16 deal narcotics, they keep the meeting short and arrange to meet a couple of customers at

17 the same location so they can deal more in a shorter time.   Surveillance was terminated a

18 short time after.

19       17.    The CS met with Investigators and gave the Investigators the purchased

20 quantity of crack-cocaine.  The CS related that he/she gave RUSSELL the pre-recorded

21 buy money in exchange for the crack-cocaine.

22       18.    The quantity of crack-cocaine was field tested with the protocol established

23 by Washington State Patrol Crime lab with positive results.  The narcotics were packaged

24 and submitted into Seattle Police Departments evidence unit as per SPD guidelines and

25 protocols.

26 **B.     SURVIELLANCE LOCATING TARGET RESIDENCE.**

27       19.    Based on the above controlled narcotics buy from RUSSELL, SPD Det.

28 Dalan obtained a Washington State court order to disclose real time device location for

AFFIDAVIT OF TFO AARON MCAULEY - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 RUSSELL's cell phone number used in the narcotics transaction.  This court order was
2 signed by the Honorable Judge Patrick Oishi.

3      20.    This data gave Investigators an area to check in the city of Renton, WA.
4 Det. Knapp located the **target vehicle** parked in the driveway of **target residence** on
5 September 6th.

6      21.    While sufficient to allow investigators to find the **target vehicle** at the
7 **target residence**, the data from the cell phone provider for RUSSELL's cell phone was
8 very inconsistent. Det Dalan therefore obtained a Washington State court order to apply a
9 GPS tracker to the **target vehicle**.  This court order was also signed by the Honorable
10 Judge Patrick Oishi.

11      22.    Investigators applied this GPS tracker to RUSSELL's vehicle at the **target
12 location** per the warrant.  Since the application, the vehicle has spent every night parked
13 at the **target residence**, either in the driveway or on the street next to the **target
14 residence**.  On one occasion, I was situated near the **target residence** and observed
15 RUSSELL exit the **target vehicle,** walk into the driveway of the **target residence** and
16 then walk to the porch where the front door is located.   I circled the block and when I
17 next drove by the target location, RUSSELL was already inside the **target residence**.
18 The **target vehicle** is the only vehicle investigators have observed RUSSELL driving
19 during our investigation.

20      23.    During the tracking of the **target vehicle** and RUSSELL**,** Investigators
21 observed that RUSSELL's activities run late into the early morning.  Investigators
22 located RUSSELL and the **target vehicle** at the Silver Dollar casino on Pacific Highway
23 S and S 192nd on several occasions until 3-4:00 AM.   On September 12, 2018,
24 Investigators were conducting surveillance on RUSSELL in the target vehicle and he was
25 making suspected narcotic transactions till approximately 1:00 AM.

26     **V.**    **KNOWLEDGE BASED ON TRAINING AND EXPERIENCE**
27      24.    Based on my training and experience, and my discussions with other
28 experienced officers and agents involved in drug investigations, I know the following:

AFFIDAVIT OF TFO AARON MCAULEY - 6

1        a.     Traffickers of controlled substances, and those who assist them,

2 maintain and tend to retain accounts or records of their drug trafficking activities,

3 including lists of drug quantities and money owed, telephone records including contact

4 names and numbers, photographs, and similar records of evidentiary value.  These items

5 are generally kept in locations where drug traffickers believe their property is secure and

6 will remain undetected from law enforcement, such as inside their homes, vehicles and

7 storage lockers.

8        b.     Traffickers of controlled substances commonly maintain addresses,

9 vehicles, or telephone numbers which reflect names, addresses, vehicles, and/or

10 telephone numbers of their suppliers, customers and associates in the trafficking

11 organization and it is common to find drug traffickers keeping records of said associates

12 in cellular telephones and other electronic devices.  Traffickers almost always maintain

13 cellular telephones for ready access to their clientele and to maintain their ongoing

14 narcotics business.  Traffickers frequently switch cellular telephone devices and retain

15 their older phones, rather than throwing them out, because those devices often contain

16 this information.

17        c.     Traffickers maintain evidence of their criminal activity at locations

18 that are convenient to them, including their residences, hotel rooms, vehicles, and storage

19 lockers.  This evidence often includes more than contraband and paraphernalia and

20 includes financial records, records of property and vehicle ownership, records of property

21 rented, records of post office boxes used to ship and receive contraband and currency,

22 records of other storage facilities used to hide drugs or currency, and other documentary

23 evidence relating to commission of, and proceeds from, their crimes.

24        d.     During the execution of search warrants, it is common to find

25 papers, letters, billings, documents, and other writings which show ownership, dominion,

26 and control of vehicles, residences, and/or storage units.

27        e.     Persons trafficking and using controlled substances commonly sell

28 or use more than one type of controlled substance at any one time.

AFFIDAVIT OF TFO AARON MCAULEY - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      f.      Traffickers frequently maintain items necessary for weighing,

2  packaging, and cutting drugs for distribution.  This paraphernalia often includes, but is

3  not limited to, scales, plastic bags, and cutting/diluting agents and items to mask the odor

4  of drugs

5      g.      Traffickers often maintain weapons, including guns and ammunition,

6  in secure locations such as their residences and vehicles and storage lockers, in order to

7  protect their drugs and drug proceeds.

8      h.      Traffickers often have false identification documents and

9  identification documents in the names of others.

10     i.      Drug trafficking is a cash business, and in order to escape notice

11  from authorities for using unexplained income, or hide excessive cash from illegal

12  activities, traffickers either keep large quantities of cash at home or other secure locations

13  such as a storage locker, or vehicle, or convert the cash into other valuable assets, such as

14  jewelry, precious metals, monetary instruments, or other negotiable forms of wealth.

15  Records of such conversions are often stored where a trafficker lives.

16     25.     As noted above, drug dealers use cellular telephones as a tool or

17  instrumentality in committing their criminal activity.  They use them to maintain contact

18  with their suppliers, distributors, and customers.  They prefer cellular telephones because,

19  first they can be purchased without the location and personal information that land lines

20  require.  Second, they can be easily carried to permit the user maximum flexibility in

21  meeting associates, avoiding police surveillance, and traveling to obtain or distribute

22  drugs.  Third, they can be passed between members of a drug conspiracy to allow

23  substitution when one member leaves the area temporarily.  Since cellular phone use

24  became widespread, every drug dealer I have contacted has used one or more cellular

25  telephone for his or her drug business.  I also know that it is common for drug traffickers

26  to retain in their possession phones that they previously used, but have discontinued

27  actively using, for their drug trafficking business.  Based on my training and experience,

28

AFFIDAVIT OF TFO AARON MCAULEY - 8

1   the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or

2   crimes.  This includes the following:

3           a.      The assigned number to the cellular telephone (known as the mobile

4   directory number or MDN), and the identifying telephone serial number (Electronic

5   Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile

6   Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are

7   important evidence because they reveal the service provider, allow us to obtain subscriber

8   information, and uniquely identify the telephone.  This information can be used to obtain

9   toll records, to identify contacts by this telephone with other cellular telephones used by

10  co-conspirators, to identify other telephones used by the same subscriber or purchased as

11  a part of a package, and to confirm if the telephone was contacted by a cooperating

12  source or was intercepted on a wiretap here or in another district.

13          b.      The stored list of recent received calls and send calls in important

14  evidence.  It identifies telephones recently in contact with the telephone user.  This is

15  valuable information in a drug investigation because it will identify telephones used by

16  other members of the organization, such as suppliers, distributors and customers, and it

17  confirms the date and time of contacts.  If the user is under surveillance, it identifies what

18  number he called during or around the time of a drug transaction or surveilled meeting.

19  Even if a contact involves a telephone user not part of the conspiracy, the information is

20  helpful (and thus is evidence) because if leads to friends and associates of the user who

21  can identify the user, help locate the user, and provide information about the user.

22  Identifying a defendant's law-abiding friends is often just as useful as identifying his

23  drug trafficking associates.

24          c.      Stored text messages are important evidence, similar to stored

25  numbers.  Agents can identify both drug associates, and friends of the user who likely

26  have helpful information about the user, his location, and his activities.

27          d.      Photographs on a cellular telephone are evidence because they help

28  identify the user, either through his or her own picture, or through pictures of friends,

AFFIDAVIT OF TFO AARON MCAULEY - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   family, and associates that can identify the user.  Pictures also identify associates likely to

2   be members of the DTO.  Some drug dealers photograph groups of associates, sometimes

3   posing with weapons and showing identifiable gang signs.

4           e.      Stored address records are important evidence because they show the

5   user's close associates and family members, and they contain names and nicknames

6   connected to phone numbers that can be used to identify suspects.

### VI.    REQUEST FOR SEALING

8           26.     Based upon my knowledge, training, and experience, it is my belief that the

9   information contained in this affidavit, application, and search warrant, if prematurely

10  disclosed to the public, could result in the target's flight from prosecution, destruction of

11  or tampering with evidence, intimidation or retaliation against potential witnesses, and

12  could otherwise seriously jeopardize the ongoing investigation.  Therefore, I request that

13  this affidavit be sealed, and that notice required by Fed. R. Crim. P. 41(f) be delayed for

14  up to ninety (90) days after expiration of the search warrant, in accordance with Title 18,

15  United States Code 3103a(b).  If necessary, I may request that the Court, upon a showing

16  of good cause, order a further adjournment of the time permitted to serve notice, if

17  necessary to protect the safety of any individual, avoid flight or destruction of evidence,

18  and ensure that the investigation is not jeopardized prior to its completion.

19  //

20  //

21  //

22

23

24

25

26

27

28

AFFIDAVIT OF TFO AARON MCAULEY - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VII. CONCLUSION

27.     For the reasons set forth above, I respectfully submit there is probable cause to believe that evidence of the crimes of distribution of controlled substances, possession of controlled substances with intent to distribute, and conspiracy to distribute controlled substances, all as described in Attachment B, will be found in the **Target Residence and target vehicle**, further described in Attachment A, and ask that a warrant be issued to search the **Target Residence and target vehicle** for said evidence. Due to RUSSELL's unpredictable schedule and history of being armed, I also ask that the court authorize law enforcement to execute the warrant at any time of the day or night as authorized by statute.

_____
AARON MCAULEY
Task Force Officer, DEA

Subscribed to and sworn before me on 24th day of September, 2018.

_____
THE HONORABLE BRIAN A. TSUCHIDA
United States Magistrate Judge

AFFIDAVIT OF TFO AARON MCAULEY - 11